IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| BRANDON CHRISTOPHER GLADNEY, | ) ) ) |
| Plaintiff, | ) ) |
| VS. | ) ) No. 13-2668-JDT-tmp |
| SHELBY COUNTY, ET AL., | ) ) ) |
| Defendants. | ) |

ORDER TO MODIFY THE DOCKET,
DENYING MOTIONS TO AMEND AND MOTION TO APPOINT COUNSEL,
GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT,
CERTIFYING AN APPEAL WOULD NOT BE TAKEN IN GOOD FAITH,
AND NOTIFYING PLAINTIFF OF APPELLATE FILING FEE

The Plaintiff, Brandon Christopher Gladney, who is currently incarcerated at the Shelby County Correctional Center in Memphis, Tennessee, filed a *pro se* complaint pursuant to 42 U.S.C. § 1983 on August 26, 2013, concerning his previous confinement at the Shelby County Criminal Justice Complex ("Jail"). (ECF No. 1.) The Court granted leave to proceed *in forma pauperis* and assessed the civil filing fee pursuant to 28 U.S.C. §§ 1915(a)-(b). (ECF No. 8.) On October 28, 2013, the Court dismissed portions of the complaint and directed that process be issued for five individual Defendants, Toriano Davis, Robert Hilson, Takietha Tuggle, Shauntia Brown, and Santana Leverson. (ECF No. 15.)[1]

---

[1] The Clerk is directed to modify the docket to record the Defendants' first names, which are found in their affidavits.

Before the Court is the Defendants' motion for summary judgment. (ECF Nos. 35 & 36.) Plaintiff did not respond to that motion and did not seek an extension of time in which to do so. On May 2, 2014, Plaintiff filed a motion for appointment of counsel. (ECF No. 50.) A motion to amend the complaint was filed on May 20, 2014, accompanied by a proposed amendment. (ECF No. 53.) Plaintiff filed a second proposed amended complaint on June 6, 2014, which the Court construes as a separate motion to amend. (ECF No. 57.)[2]

Pursuant to 28 U.S.C. § 1915(e)(1), "[t]he court may request an attorney to represent any person unable to afford counsel." However, "[t]he appointment of counsel in a civil proceeding is not a constitutional right." *Lanier v. Bryant*, 332 F.3d 999, 1006 (6th Cir. 2003); *see also Shepherd v. Wellman*, 313 F.3d 963, 970 (6th Cir. 2002) ("[T]he plaintiffs were not entitled to have counsel appointed because this is a civil lawsuit."); *Lavado v. Keohane*, 992 F.2d 601, 605-06 (6th Cir. 1993) (no constitutional right to counsel in a civil case); *Farmer v. Haas*, 990 F.2d 319, 323 (7th Cir. 1993) ("There is no constitutional or . . . statutory right to counsel in federal civil cases . . . ."). Appointment of counsel is "a privilege that is justified only by exceptional circumstances." *Lavado*, 992 F.2d at 606 (internal quotation marks & citation omitted). "In determining whether 'exceptional circumstances' exist, courts have examined the type of case and the abilities of the plaintiff to represent himself. This generally involves a determination of the complexity of the factual and legal issues involved." *Id.* at 606 (internal quotation marks & citations omitted).

---

[2] The Court has received numerous letters from Plaintiff asking various legal questions. However, neither the Court nor the Clerk's office may give Plaintiff legal advice, and the Clerk has responded only to those letters that could be answered without violating that restriction.

2

Appointment of counsel is not appropriate when a *pro se* litigant's claims are frivolous or when his chances of success are extremely slim. *Id.* (citing *Mars v. Hanberry*, 752 F.2d 254, 256 (6th Cir. 1985)); *see also Cleary v. Mukasey*, 307 F. App'x 963, 965 (6th Cir. 2009) (same).[3]

Plaintiff has not satisfied his burden of demonstrating that the Court should exercise its burden to appoint counsel in this case. Nothing in Plaintiff's submission distinguishes this case from numerous other cases that are litigated by *pro se* prisoners without the assistance of counsel. The motion for appointment of counsel is DENIED.

In the order of partial dismissal, the Court summarized Plaintiff's allegations:

> The complaint alleges that, on June 21, 2013, Defendant Hilson beat Plaintiff inside a storage closet in the administrative segregation area of the Jail. On August 1, 2013, while Plaintiff was in the shower, he was ordered to get on his knees and put his hands behind his head. Although Plaintiff complied with that order, Defendant Davis allegedly tackled Plaintiff while he was on his knees. Defendant Brown was present and filmed the incident. (Compl., [ECF No.] 1 at 2.) As a result of the assault on August 1, 2013, Plaintiff received nine stitches under his left eye. (*Id.* at 3.) Defendant Tuggle was allegedly present during both incidents. It is unclear from the complaint itself whether Plaintiff contends that Defendants Brown, Hilson, and Leverson were present during one or both incidents. (*Id.*) However, in copies of Plaintiff's grievances, which are attached to the complaint, he indicated that Leverson and Brown also participated in the June 21, 2013, assault ([ECF No.] 1-1 at 3), and that Davis and "two other DRT officers" participated in the August 1, 2013, incident (*id.* at 3-4).

(ECF No. 15 at 2.)

---

[3] These factors are important, because § 1915(e)(1) "does not authorize the federal courts to make coercive appointments of counsel" to represent indigent civil litigants. *Mallard v. United States Dist. Ct.*, 490 U.S. 296, 310 (1989).

In the motion to amend filed May 20, 2014 (ECF No. 53), Plaintiff sought to add two Defendants, Chief Jailer Robert Moore and Chief of Security McGhee. However, other than a brief statement regarding their positions and duties, there are no factual allegations whatsoever against either of these individuals in the proposed amended complaint. Therefore, it appears that Plaintiff is attempting to sue Moore and McGhee solely because of their supervisory positions.

Under 42 U.S.C. § 1983, "[g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009); *see also Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984). Thus, "a plaintiff must plead that each Government-official defendant, through the official's own official actions, violated the Constitution." *Iqbal*, 556 U.S. at 676.

> There must be a showing that the supervisor encouraged the specific instance of misconduct or in some other way directly participated in it. At a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinates.

*Bellamy*, 729 F.2d at 421 (citation omitted). A supervisory official who is aware of the unconstitutional conduct of his or her subordinates, but fails to act, generally cannot be held liable in his or her individual capacity. *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Gregory v. City of Louisville*, 444 F.3d 725, 751 (6th Cir. 2006); *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999); *Lillard v. Shelby Cnty. Bd. of Educ.*, 76 F.3d 716, 727-28 (6th Cir. 1996). Plaintiff does not allege that either Moore or McGhee had any personal involvement at issue. Therefore, the motion for leave to amend is DENIED.

In the proposed amendment docketed June 6, 2014, Plaintiff again seeks to include Moore and McGhee as Defendants because of their supervisory positions. Plaintiff also seeks to re-allege his claims against Officers J. Robertson, K. Williams, and Jessie Griffin[4] and to add as new Defendants Officer C. Cleaves, Officer L. Sheffield, and Correct Care Solutions, LLC ("CCS"). Plaintiff alleges that during the incident that occurred on August 1, 2013, Cleaves tackled him, Sheffield was responsible for putting on the leg irons and controlling his lower extremities, and Robertson was responsible for putting on the handcuffs and controlling his upper extremities. (ECF No. 57 at 2.) Defendants Leverson and Davis were present and could have attempted to prevent the incident before Plaintiff was tackled by Cleaves. Defendant Tuggle was present before and after the takedown, and Defendant Hilson was present when the takedown occurred in order to deploy chemical agents. With regard to CCS, Defendant alleges only that CCS has a contract with Shelby County "to provide adequate, effective and meaningfull [sic] access to medical and following the orders of outside professional docters [sic] when an inmate is sent to outside medical." (*Id.*)

The scheduling order entered February 27, 2014, provided that motions to amend and to join parties were due by May 27, 2014. This proposed amendment was not signed by Plaintiff until May 30, 2014. Therefore, the amendment is untimely, and leave to amend is again DENIED.

---

[4] Robertson, Williams, and Griffin were dismissed in the order of partial dismissal because the original complaint contained no factual allegations against them. (ECF No. 15 at 7-8.)

Pursuant to Fed. R. Civ. P. 56, summary judgment is appropriate "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he burden on the moving party may be discharged by 'showing'–that is, pointing out to the district court–that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Rule 56(c)(1) provides that "[a] party asserting that a fact cannot be or is genuinely disputed" is required to support that assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers or other materials;[5] or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

"If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c)" the district court may:

> (1) give an opportunity to properly support or address the fact;
>
> (2) consider the fact undisputed for purposes of the motion;
>
> (3) grant summary judgment if the motion and supporting materials– including the facts considered undisputed–show that the movant is entitled to it; or

---

[5] "A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). Additionally, Rule 56(c)(4) specifically provides that "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."

> (4) issue any other appropriate order.

Fed. R. Civ. P. 56(e).

> In *Celotex Corp.*, the Supreme Court explained that Rule 56:
>
>> mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof.

477 U.S. at 322-23. In considering whether to grant summary judgment, "the evidence as well as the inferences drawn therefrom must be read in the light most favorable to the party opposing the motion." *Kochins v. Linden-Alimak, Inc.*, 799 F.2d 1128, 1133 (6th Cir. 1986); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986) (same).

A genuine issue of material fact exists "if the evidence [presented by the non-moving party] is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

> The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict[.]"

*Id.* at 252; *see also Matsushita*, 475 U.S. at 586 ("When the moving party has carried its burden under Rule 56[(a)], its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." (footnote omitted)).  However, the Court's function is not to weigh the evidence, judge credibility, or in any way determine the truth of the matter.  *Liberty Lobby*, 477 U.S. at 249.  Rather, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Id.* at 251-52.

The fact that Plaintiff did not respond does not require granting Defendant's motion.  Nevertheless, if the allegations of the complaint are contravened by Defendant's evidence and Defendant is entitled to judgment as a matter of law on those facts, then summary judgment is appropriate.  *Smith v. Hudson*, 600 F.2d 60, 65 (6th Cir. 1979).

Defendants contend they are entitled to summary judgment because Plaintiff was subjected only to the least amount of force that was necessary under the circumstances.  In support of their motion, Defendants have submitted their affidavits (Davis Aff., ECF No. 35-1; Hilson Aff., ECF No. 35-2; Brown Aff., ECF No. 35-3; Tuggle Aff., ECF No. 35-4; Leverson Aff., ECF No. 35-5) and the affidavit of Deputy Jailer Griffin (ECF No. 35-6).  Defendants have also submitted a video recording of the August 1, 2013, incident, which the Court has viewed.  (ECF No. 37.)

Plaintiff's claims arise under the Eighth Amendment, which prohibits cruel and unusual punishment.[6] *See generally Wilson v. Seiter*, 501 U.S. 294 (1991). An Eighth Amendment claim consists of both objective and subjective components. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Hudson v. McMillian*, 503 U.S. 1, 8 (1992); *Wilson*, 501 U.S. at 298; *Brooks v. Celeste*, 39 F.3d 125, 127-28 (6th Cir. 1994); *Hunt v. Reynolds*, 974 F.2d 734, 735 (6th Cir. 1992). The objective component requires that the deprivation be "sufficiently serious." *Farmer*, 511 U.S. at 834; *Hudson*, 503 U.S. at 8; *Wilson*, 501 U.S. at 298. The subjective component requires that the official act with the requisite intent, that is, that he have a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834; *Wilson*, 501 U.S. at 297, 302-03.

With regard to claims of excessive force by prison officials, "[t]he test for whether the use of force violates the Eighth Amendment requires a court to determine if the defendant's conduct caused the unnecessary and wanton infliction of pain." *Griffin v. Hardrick*, 604 F.3d 949, 953 (6th Cir. 2010) (internal quotation marks omitted).[7] That question "ultimately turns on whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Whitley v. Albers*, 475

---

[6] Convicted inmates' rights stem from the Eighth Amendment, while pre-trial detainees' rights stem from the Fourteenth Amendment. *Thompson v. Cnty. of Medina*, 29 F.3d 238, 242 (6th Cir. 1994); *Roberts v. City of Troy*, 773 F.2d 720, 723 (6th Cir. 1985). Although Plaintiff was a pre-trial detainee during the events at issue, the Court will analyze his claims under Eighth Amendment principles because the rights of pre-trial detainees are equivalent to those of convicted prisoners.

[7] With regard to Plaintiff's claims for failure to stop the assault, "[i]n the prison context, the Eighth Amendment imposes a duty on prison officials to take reasonable measures to guarantee the safety of the inmates." *Clark v. Corr. Corp. of Am.*, 98 F. App'x 413, 415 (6th Cir. 2004).

9

U.S. 312, 320-21 (1986) (internal quotation marks omitted); *see also Hudson*, 503 U.S. at 6-7. In *Hudson*, the Supreme Court held that a significant physical injury is not required to establish the objective component of an Eighth Amendment claim. 503 U.S. at 7-9. However, the Supreme Court made clear that every physical contact does not violate the Eighth Amendment:

> That is not to say that every malevolent touch by a prison guard gives rise to a federal cause of action. *See Johnson v. Glick*, 481 F.2d [1028,] 1033 [(2d Cir. 1973)] ("Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chamber, violates a prisoner's constitutional rights"). The Eighth Amendment's prohibition of "cruel and unusual" punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort "'repugnant to the conscience of mankind." *Whitley*, 475 U.S., at 327, 106 S. Ct., at 1088 (quoting *Estelle*, *supra*, 429 U.S., at 106, 97 S. Ct., at 292) (internal quotation marks omitted).

*Id.* at 9-10.

The Supreme Court recently reaffirmed *Hudson*'s holding, emphasizing that claims of excessive force do not require any particular quantum of injury. "Injury and force, however, are only imperfectly correlated, and it is the latter that ultimately counts. An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." *Wilkins v. Gaddy*, 559 U.S. 34, 38 (2010).

In his affidavit, Defendant Hilson states that he is a member of the Detention Response Team ("DRT") at the Jail and was assigned to the Administrative Segregation floor

at the time of the incidents alleged in the complaint. (ECF No. 35-2 at 2.)[8] At that time, he was also a Crisis Intervention Team ("CIT") officer. Inmates in the Administrative Segregation area are locked in their cells 23 hours a day. They are allowed out only for a 15-minute shower and a 45-minute recreation period. The inmates are to be handcuffed at all times while they are out of their cells being escorted to and from any location. (*Id.*)

On June 21, 2013, Hilson was getting Plaintiff ready for a court appearance, which required that Plaintiff be searched for contraband. After being searched, the inmate is given an arm band indicating he is going to court. When Hilson searched Plaintiff on that day, he found that Plaintiff was wearing two pairs of pants, which is a violation of Jail rules. Defendants Brown and Leverson, also DRT members, were present at the time. Hilson took Plaintiff into the dress out area so he could remove the second pair of pants. The dress out area is a small room where strip searches are performed and where some supplies are stored; there is a glass window in the door. (*Id.* at 3.) Defendant Leverson went into the room with Hilson and the Plaintiff, while Defendant Brown stood outside the door. (*Id.*; ECF No. 35-3 at 3; ECF No. 35-5 at 3.)

As Hilson unshackled Plaintiff's leg irons so he could remove the second pair of pants, Plaintiff kicked Hilson in the face and broke his glasses. (ECF No. 35-2 at 3; ECF No. 35-5 at 3.) Hilson and Leverson immediately took Plaintiff to the ground in order to get him under control. After hearing the commotion, Brown entered the room to assist. (ECF No. 35-

---

[8] Hilson states the DRT had been specially assigned to the Administrative Segregation floor in February 2013 because of issues on that floor. (*Id.*)

2 at 3; ECF No. 35-3 at 3; ECF No. 35-5 at 3.) Brown grabbed Plaintiff's legs while Hilson and Leverson attempted to control his upper body. The three officers got Plaintiff under control and reshackled him. (ECF No. 35-3 at 3; ECF No. 35-5 at 3.) After he was reshackled, Plaintiff was taken to intake to get his arm band. As Defendant Tuggle approached, Plaintiff moved aggressively toward her. He refused orders to back up and was taken down again; Plaintiff was then taken to the medical department. (ECF No. 35-2 at 4; ECF No. 35-4 at 3.) Defendants assert they used only the amount of force necessary to gain control of Plaintiff and the situation. (ECF No. 35-2 at 3; ECF No. 35-3 at 3; ECF No. 35-5 at 3.)

On August 1, 2013, Officer Griffin, who was the pod officer for Administrative Segregation, handcuffed Plaintiff and transferred him from his cell to the shower. After 15 minutes were up, Griffin told Plaintiff his time was up. After 20 minutes, Plaintiff was again told he needed to come out of the shower. After approximately 25 minutes, Griffin gave Plaintiff several orders to come out, but he responded that they might as well do their job and come get him because he did not intend to come out. (ECF No. 35-6 at 2-3, ¶¶ 6-7.) Griffin notified Sergeant Tuggle that Plaintiff was refusing to come out of the shower, and that other inmates had flooded the pod at Plaintiff's urging. Tuggle reported this to the Shift Commander, Lt. Rudd. Tuggle also spoke to Plaintiff, but he continued to refuse to come out. Hilson was then sent in as a CIT officer, but he also was unable to convince Plaintiff to exit the shower. Hilson states that Plaintiff, who had put his clothes on, turned his back and sat down in the shower. (ECF No. 35-2 at 4; ECF No. 35-4 at 3-4.)

Because of Plaintiff's history of assaultive behavior while in the Jail, the Shift Commander determined that the DRT was needed, and Tuggle sent out an Alpha Nine, the code to assemble the DRT for briefing on an operation. Tuggle was not part of the DRT and did not take part in that operation, though she was on the floor. (ECF No. 35-4 at 4.) On that day, Hilson was the leader for the DRT (ECF No. 35-2 at 4); Brown was assigned to take the video of the operation, but did not participate in the actual extraction of Plaintiff from the shower. (ECF No. 35-3 at 4). There were five members of the DRT besides Hilson, the team leader. Team member number one was assigned as point man, number two was assigned to secure Plaintiff's upper body and handcuff him, and number three was to secure his legs and shackle him. Defendants Davis and Leverson were team members four and five. They were assigned as extra security, and would take over if one of the other three became unable to continue. After assigning the team members' responsibilities, Hilson himself did not go into the pod or see the takedown, although he was on the floor. (ECF No. 35-2 at 5; ECF No. 35-1 at 3; ECF No. 35-5 at 4.)

When the DRT arrived at the pod, they had to wait for the water to be removed where the inmates had flooded the area. The team then entered and went to the shower area, where team members one, two, and three unlocked the door, subdued and shackled Plaintiff, and removed him from the shower. Neither Davis nor Leverson entered the shower or laid hands on Plaintiff during the actual operation. Both Davis and Leverson state they did not see any officer take inappropriate action or use force that was unnecessary. (ECF No. 35-1 at 3; ECF No. 35-5 at 4.) After Plaintiff was removed from the shower, Leverson escorted him into the

13

hallway outside the pod and turned him over to Davis, who escorted him to the medical department for treatment. (ECF No. 35-1 at 3; ECF No. 35-5 at 4.) He was then taken to the Regional Medical Center at Memphis. (ECF No. 35-1 at 3-4.)

This evidence submitted by the Defendants is unrefuted and demonstrates that Plaintiff was not subjected to the use of excessive force. Rather, Plaintiff assaulted Hilson and had to be subdued, and then refused to come out of the shower, resulting in his extraction by the DRT. There is no evidence whatsoever that the force used was not reasonable under the circumstances.

The Court finds no genuine issues of material fact for trial in this case on Plaintiff's claims of excessive force and failure to protect. Therefore, the Defendants are entitled to judgment as a matter of law, and the motion for summary judgment is GRANTED.

Pursuant to 28 U.S.C. § 1915(a)(3), the Court must also consider whether an appeal by Plaintiff in this case would be taken in good faith. The good faith standard is an objective one. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). The test for whether an appeal is taken in good faith is whether the litigant seeks appellate review of any issue that is not frivolous. *Id.* The same considerations that lead the Court to grant summary judgment also compel the conclusion that an appeal would not be taken in good faith.

Therefore, it is CERTIFIED, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal in this matter by Plaintiff would not be taken in good faith.

The Court must also address the assessment of the $505 appellate filing fee if Plaintiff nevertheless appeals the dismissal of this case. A certification that an appeal is not taken in

good faith does not affect an indigent prisoner plaintiff's ability to take advantage of the installment procedures contained in § 1915(b). *See McGore v. Wrigglesworth*, 114 F.3d 601, 610-11 (6th Cir. 1997). *McGore* sets out specific procedures for implementing the Prison Litigation Reform Act, 28 U.S.C. § 1915(a)-(b). Therefore, the Plaintiff is instructed that if he wishes to take advantage of the installment procedures for paying the appellate filing fee, he must comply with the procedures set out in *McGore* and § 1915(a)(2) by filing an updated *in forma pauperis* affidavit and a current, certified copy of his inmate trust account for the six months immediately preceding the filing of the notice of appeal.

The Clerk is directed to prepare a judgment.

IT IS SO ORDERED.

 s/ **James D. Todd**
JAMES D. TODD
UNITED STATES DISTRICT JUDGE